IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KASANDRA L KELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-cv-528-TLW |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Kasandra L. Kelley requests judicial review pursuant to 42 U.S.C. §405(g) of the decision of the Commissioner of the Social Security Administration denying plaintiff's claims for supplemental security income under section 1614(a)(3)(A) of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge, (dkt # 8). Any appeal will be directly to the Tenth Circuit Court of Appeals.

## Background

Plaintiff last worked September 1, 2009 in a temporary job through Work Force and the Department of Human Services. Before her four month stint in that job, she was formerly employed as a janitor in a cafeteria and was a sandwich maker at Subway for two weeks. (R. 35). She left both positions due to her inability to get along with her peers. Plaintiff applied for disability because of her social issues and her tendencies to easily become rude, angry, argumentative, and oftentimes depressed. Plaintiff identifies her primary issues as being unable

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

to handle stress, social situations, and depression, all of which she claims make it difficult for her to leave her house. (R. 35). Plaintiff has also struggled with ADHD for much of her life, and she graduated from high school with B's and C's. However, she has seen improvement in her conditions over the past year. She currently lives in an all-expenses-paid apartment and receives food stamps. Id.

Plaintiff's own Function Reports indicate that she has no issues with her own personal care. On a daily basis, she is capable of taking her own medication, watching television, cleaning, reading, preparing meals, cleaning up, caring for her foster family's dogs, cats, goats, and mule, speaking on the phone, regularly attending church, the library, and the grocery store independently. (R. 35, 211). Additionally, she reports that her ADHD affects her memory, completion of tasks, concentration, ability to follow instructions, and ability to get along with others. (R. 35, 216). Plaintiff believes that she can focus for 30 minutes to an hour, can handle a change in routine and written instructions, but she cannot handle stress well. In her second Function report, plaintiff additionally states that her hobbies include sewing and reading, she can finish what she starts, but she can only walk for 30 minutes at a time. (R. 35, 114).

At plaintiff's hearing before an Administrative Law Judge ("ALJ"), several third parties provided additional insight into plaintiff's conditions. Plaintiff's coworker, Meredith Reeve, testified that in a workplace setting, plaintiff presents herself as anxious, depressed, subject to frequent mood changes, and having an attitude. (R. 35, 70). A Function Report-Adult-Third Party prepared by plaintiff's former foster mother, Libby D. Malone, states that she has known plaintiff for three years and frequently spends time with her. (R. 35, 186). Together, plaintiff and Ms. Malone shop, eat, clean the house, cook, and go to church activities together. Ms. Malone reports that plaintiff has no difficulty with sleep or personal care, preparing her own meals,

cleaning her room and bathroom, visiting the neighbors, and going to the library and church. (R. 36).

Plaintiff has asthma, for which she receives albuterol prescriptions, but has never been hospitalized. Dr. Lora Collier, M.D. noted in 2008 that plaintiff is "not a bully, anxious, not fearful, not euphoric, negative for paranoia, irritable, does not exhibit obsessive-compulsive behavior, no sleep disturbance, does not display picking behavior, combative, and is focused." (R. 36, 327). In the same year, another doctor diagnosed plaintiff with PTSD, Oppositional Defiant Disorder, Reactive Attachment Disorder, Mathematics Disorder, Sexual Abuse of a Child, Physical Abuse of a Child and Neglect of a Child. Various other doctors diagnosed plaintiff with ADHD, and as having poor impulse control and hyperactivity. (R. 36, 241). One doctor reported that plaintiff had 11 of the 19 listed "severe impairments," and stated that plaintiff lacked the ability to maintain attention, or carry out or comprehend simple instructions. (R. 37, 497). At the request of the agency, Dr. Tom Shadid, Ph.D., examined plaintiff and reviewed her records and found that although she had moderate limitations in the activities of daily living, social functioning, concentration, persistence and pace; she showed insufficient evidence of decompensation. In summary, he concluded that plaintiff could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and could adapt to a general work setting, but not the general public. (R. 37, 390).

## **ALJ's Decision**

The ALJ concluded that although the plaintiff has severe impairments of asthma, depression, and post-traumatic stress disorder, the plaintiff's impairments did not meet or medically equal any listed impairment. (R. 31). In reaching his conclusion, the ALJ noted that in order to constitute medically listed asthma, there must be reports of medically documented asthma, chronic asthmatic bronchitis, and asthma attacks in spite of prescriptions. (R. 31, 32).

These episodes must also occur within a specific time period and with a certain frequency. (R. 32). Because the plaintiff could not satisfy the requirements of severity and frequency, the ALJ concluded that the plaintiff did not meet the criteria for medically listed asthma.

The ALJ additionally considered the plaintiff's alleged mental and personality disorders. In order to have a medically listed mental impairment, "there must be medically documented psychological or behavioral abnormalities… evidenced by: disorientation to time and place, memory impairment, perceptual or thinking disturbances, change in personality, disturbance in mood, emotional liability, impairments in impulse control, or loss of measured intellectual ability of at least 15 I.Q. points." (R. 32). In addition, the ALJ reasoned that "there must be medically documented findings of generalized persistent anxiety" accompanied by certain symptoms. (R. 32). In order to constitute a medically listed personality disorder, symptoms must be so severe that "the individual exhibits deeply ingrained, maladaptive patterns of behavior associated with reclusiveness or autistic thinking; pathologically inappropriate suspiciousness or hostility; oddities of thought, perception, speech and behavior; persistent disturbances of mood or affect; pathological dependence, passivity or aggressively; or intense and unstable interpersonal relationships." (R. 32).

In order to fully determine whether the plaintiff had met the standards for mental and personality disorders, the ALJ addressed the "paragraph B" criteria. To do so, he examined whether the plaintiff provided evidence of two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation." (R. 33). The ALJ concluded that the plaintiff failed to satisfy any of the set standards for mental and personality disorders, and therefore did not have a medically listed mental impairment.

Additionally, the ALJ determined that plaintiff's "mental impairments [did] not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated episodes of decompensation, each of extended duration, the "paragraph B" criteria [were] not satisfied." (R. 34).

The ALJ addressed plaintiff's credibility as part of his RFC findings. (R. 34-37). First, the ALJ summarized plaintiff's testimony: she last worked September 1, 2009, she has a tendency to become angry, rude, and argumentative, she is applying for disability because she cannot get along with people, she does not sleep and she isolates herself when she is depressed, she has ADHD, she graduated from high school with B's and C's, she wants a job because she does not like living inside, and she is not as depressed as she used to be. (R. 35). The ALJ noted that plaintiff performs household chores, takes care of her foster family's pets, prepares meals, and is capable of finishing what she starts. Id. The ALJ next analyzed the third party testimony of Meredith Reeve, who stated that plaintiff's primary issues are her attitude, anxiety, depression and mood changes, as well as temper tantrums. Id. The ALJ also took into account the opinion of plaintiff's foster mother, who opined that plaintiff is capable of sleeping, personal care, preparing her own meals, cleaning her own room and bathroom, visiting with the neighbor, and going to the library and church. Id. Additionally, the ALJ noted plaintiff's prescription for asthma medicine, but that plaintiff has no medical record of emergency treatment for her asthma. (R.36).

The ALJ noted inconsistencies in reports of plaintiff's mood and presentation in the medical reports, indicating that claimant's psychological issues fluctuate. (R.36, 37). Although the ALJ considered the report of plaintiff's current physician, he reasoned that this report is an outlier that is outweighed by a number of conflicting reports. (R. 37). By comparison, medical reports spanning from 2007 through 2009 show that plaintiff was tested and frequently diagnosed with ADHD, but was also reported to have good days, in which she appeared "jovial."

(R. 36, 37). Additionally, plaintiff's doctor from 2007 through 2008 found that plaintiff was "not a bully, anxious, not fearful, not euphoric, negative for paranoia, irritable, does not exhibit obsessive-compulsive behavior, no sleep disturbance, does not display picking behavior, combative, and is focused". (R. 36).

The ALJ specifically noted the report of Dr. Tom Shadid, who stated that although plaintiff has moderate limitations in the activities of daily living, maintaining social functioning, concentration, and persistence or pace, plaintiff can perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but not the general public. (R.364). In conclusion, the ALJ found that even though the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements regarding the intensity, persistence and limiting effects of her impairments were not credible. After considering the testimony of the vocational expert, and the plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that the plaintiff failed to allege any physical limitations or restrictions that would preclude her from performing medium-level work related activities.

## Issues

Plaintiff appeals the decision of the ALJ, and asserts that the ALJ incorrectly determined that plaintiff was not disabled. Plaintiff specifically asserts that the ALJ failed to: (1) properly consider the medical source opinions; (2) perform a proper step 5 determination; (3) properly consider plaintiff's obesity; and (4) perform a proper credibility analysis. (Dkt. # 17).

## Discussion

The Court finds that although the ALJ's credibility determination is well supported by the record, the ALJ's analysis does not comport with the applicable legal standard. The Court finds

no other error with the ALJ's decision; however, the ALJ is free to re-evaluate his decision, except with respect to plaintiff's obesity (see <u>infra.</u> at 7-8), if he reaches a different conclusion regarding plaintiff's credibility on remand.

**Credibility**

An ALJ's credibility findings warrant particular deference, because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1341 (10th Cir. 1993). Further, the review of an ALJ's credibility determination is limited, and reweighing the evidence is not permissible. <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1261 (10th Cir. 2005). As long as the ALJ sets forth the specific evidence relied on in evaluating plaintiff's credibility, the ALJ is not required to make a "formalistic factor-by-factor recitation of the evidence." <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of attempts… to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ… and the consistency or compatibility of nonmedical testimony with objective medical evidence." <u>Kepler</u>, 68 F.3d at 391 (quoting <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1489 (10th Cir. 1991)). Finally, "an ALJ's findings with respect to a claimant's credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Hardman v. Barnhart</u>, 362 F.3d at 676, 678-79 (10th Cir. 2004).

The ALJ included a detailed factual recitation of plaintiff's medical history, including plaintiff's testimony, as well as third party testimony. However, the ALJ failed to provide any analysis linking these facts with his conclusion that plaintiff's testimony lacked credibility. In his

7

report, the ALJ immediately jumped from his detailed findings of fact to the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment". (R. 37). The ALJ did not discuss plaintiff's credibility in any meaningful way or link his factual findings to his credibility finding. Although the ALJ cited more than sufficient facts to support his conclusion, the Court is not allowed to provide the necessary link between the facts and the ALJ's finding. Thus, this case must be remanded for the ALJ to revisit his credibility finding.

**Obesity**

Plaintiff's contention that the ALJ failed to properly consider her obesity is erroneous. Although a plaintiff must have the opportunity to litigate issues before the agency, "when one party utterly fails to raise a significant issue before the ALJ, [the] record developed with regard to that issue will usually be inadequate to support substantive finding in its favor and, generally speaking, neither ALJ nor agency should consider such an issue." Trident Seafoods, Inc., v. Nat'l. Labor Relations Board, 101 F.3d 111 (D.C. Cir. 1996), Chicago Local No. 458-3M v. N.L.R.B., 206 F.3d 22 (D.C. Cir. 2000). Additionally, the Tenth Circuit court of appeals requires "compelling reasons" to justify hearing an issue for the first time on appeal. Gilbert v. Astrue, 231 Fed. Appx. 778, 785 (10th Cir. 2007); Madron v. Astrue, 646 F.3d 1255, 1258 (10th Cir. 2011). When the "issue of ALJ's failure to discuss obesity as an impairment or risk factor [is] raised by claimant for the first time on appeal in social security disability benefits case, [it is] waived, [unless] exceptional circumstances justified claimant's failure to raise the issue." Robinson v. Barnhart, 183 Fed. Appx. 451 (5th Cir. 2006).

Although the plaintiff mentioned her obesity during her hearing, she failed to raise it as a substantive factor impacting her ability to work in the future. Plaintiff also failed to provide compelling reasons for the issue to be raised on appeal. Therefore, the ALJ had no obligation to consider it.

## **Conclusion**

The decision of the Commissioner finding plaintiff not disabled is hereby REVERSED in part, and this case is REMANDED for the purpose of allowing the ALJ to make the required analysis between the evidence in his decision and his credibility finding. The ALJ's decision regarding plaintiff's alleged obesity is affirmed. The Court finds no error with the remainder of the ALJ's decision; however, the ALJ is free to re-evaluate his decision, except with respect to plaintiff's obesity, if he reaches a different conclusion regarding plaintiff's credibility on remand.

SO ORDERED this 31st day of October, 2013.

T. Lane Wilson
United States Magistrate Judge